IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LOUISE SPIERING and RAY SPIERING, Husband and wife, | ) ) ) | 4:04CV3385 |
| Plaintiffs, | ) ) ) | **MEMORANDUM AND ORDER** |
| vs. | ) ) | |
| GOVERNOR DAVE HEINEMAN, In his individual capacity and official capacity as Governor of the State of Nebraska, ATTORNEY GENERAL JON BRUNING, In his individual capacity and official capacity as Attorney General of the State of Nebraska, NANCY MONTANEZ, In her individual capacity and official capacity as Director of the Nebraska Department of Health and Human Services, RICHARD RAYMOND, In his individual capacity and official capacity as Director of the Nebraska Department of Health and Human Services Department of Regulation and Licensure, and JULIE MILLER, In her individual capacity and official capacity as Coordinator of the Nebraska Department of Health and Human Services Newborn Screening Program, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This action represents a challenge to Nebraska's infant metabolic screening requirements. It is before the court on a motion to dismiss and a motion for partial summary judgment. At the time this action was filed, Louise Spiering was pregnant and about to give birth to her fourth child. Louise and Ray Spiering, parents of three healthy children, objected to Nebraska's requirement that if their fourth child is born in a hospital that child must be subjected to mandatory blood draws for genetic testing within 48 hours. Louise Spiering's doctor and hospital advised her that they must comply with the 48 hour rule. The Spierings were willing to have their newborn's blood sampled and tested, but only after 7 days had elapsed from the infant's date of birth. The Spierings are Scientologists and share a sincerely held religious belief in Scientology's silent birth methodology ("Silent Birth Methodology"). Silent Birth Methodology requires, among other things, that a newborn child not be exposed to any speaking, loud noises, stress or pain for a period of 7 days following birth.

## I. Background

Nebraska statutes generally provide that all infants born in the State of Nebraska must undergo screening for certain metabolic diseases. Neb. Rev. Stat. Ann. §§ 71-519 through 71-524 (LexisNexis 2004 Cum. Supp.). The statutes give to a state agency the right to impose implementing regulations. Very condensed and oversimplified, the Nebraska regulations require that blood draws for genetic testing of newborns be completed within 48 hours if the child was born in a hospital, but the regulations allow blood draws for genetic testing of infants born outside of a hospital to be completed 7 to 10 days after the child comes into the world. Thus, if the Spiering's child was born outside of a hospital they could and would comply with Nebraska law, but if their child was born in a hospital, the Spierings cannot comply with Nebraska law without violating their sincere religious beliefs.

After a hearing at which evidence and oral arguments were presented, I entered a temporary restraining order preventing the defendants from enforcing the Nebraska law on metabolic screening of newborns, found at Neb. Rev. Stat. Ann. §§ 71-519

through 71-524 (LexisNexis 2004 Cum. Supp.) and the implementing regulations against the plaintiffs and their doctors and hospitals until the expiration of the eighth day after the plaintiff's fourth child is born.  (Filing 8.)  While the temporary restraining order was in effect, the Spiering's fourth child, and the subject of this case, was born.  The child was sampled and tested pursuant to and within the time provided by the temporary restraining order.  The temporary restraining order was dissolved.  (Filing 14.)

The plaintiffs assert that enforcement of the Nebraska Genetic Screening Statutes and Regulations violates their constitutional rights in violation of 42 U.S.C. § 1983.  The defendants are several state officers, each named in their official and individual capacities.  The amended complaint asserts claims against the defendants in their official capacities for prospective relief and in their individual capacities for money damages.  (Filing 27 ¶ 8.)[1]  Although the prayer for relief in the amended complaint references compensatory and general damages, the plaintiffs have abandoned their claims for damages and seek only prospective relief.[2]  Compare Filing 27 at 18 (prayer for relief in Amended Complaint) with Filing 36 (Pls.' Br. In Opp'n to Mot. to Dismiss at 4) (acknowledging that the isssuance of a temporary restraining order eliminated the factual basis for claims for money damages, and "Plaintiffs have abandoned any claim for money damages arising from the violation of the Plaintiffs' constitutional rights.").)

---

[1]The amended complaint is not entirely clear as to which claims are asserted against the defendants in their individual capacities.  The defendants interpret it as I do.  Filing 35 (Ds.' Br. in Supp. of Mot. for Partial Summ. J. at 2 (citing Filing 27 ¶ 8 and reciting that the defendants are sued in their official capacities with regard to injunctive relief and in their individual capacities with regard to monetary relief).  The plaintiffs did not respond to the motion for partial summary judgment and did not challenge this statement by the defendants.  See Filing 36 (Br. in Opp'n to Ds.' Mot. to Dismiss Ps.'s Amended Complaint).

[2] The plaintiffs have not abandoned their claim for attorneys' fees under 42 U.S.C. § 1988, should they ultimately be the prevailing parties.  (Filing 36 at 15 n.4.)

II. Motion to Dismiss

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the well-pleaded allegations in the complaint must be taken as true, St. Croix Waterway Ass'n v. Meyer, 178 F.3d 515, 520 (8th Cir.1999) and the allegations in the complaint must be viewed in the light most favorable to the plaintiff. Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted). "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir. 1978), cert. denied, 439 U.S. 1070 (1979).

The motion to dismiss asserts that (1) the claims for declaratory and injunctive relief are moot; (2) the defendants have sovereign immunity as to the claims against them in their official capacities; and (3) the defendants have qualified immunity from suit in their individual capacities. As the plaintiffs have abandoned their claim for money damages, and as the defendants were sued in their individual capacities only for money damages, I do not reach the qualified immunity arguments. I next consider the mootness and immunity issues in turn.

Mootness

The defendants acknowledge that "when pregnancy is a significant factor of a claim in litigation and the pregnancy comes to term before completion of the appellate process, the claim is not necessarily moot upon termination of the pregnancy." (Filing 31, Ds.' Br. in Supp. of Mot. to Dismiss, at 6 (citing Roe v. Wade, 410 U.S. 113, 125 (1973)).) They also admit that cases involving pregnancy represent the exceptional situation where the "capable of repetition but evading

review" doctrine applies, when "'the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality.'" (Filing 31 at 6 (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983)).) Citing the original complaint, Defendants assert that this claim is moot because the plaintiffs did not allege that they are capable of having more children or plan to have more children, and that this court cannot assume there is a likelihood that the Spierings will have additional children because health concerns were associated with the birth of their fourth child. (Filing 31 at 7.)

Defendants' mootness argument ignores the fact that the plaintiffs submitted an Amended Complaint prior to the filing of the motion to dismiss. (Filing 27.) The Amended Complaint asserts that the plaintiffs "continue to engage in sexual activity and marital relations while not taking any steps or measures to prevent future pregnancies, making it likely that Louise Spiering will become pregnant again." (Filing 27 ¶ 41.) It further asserts that if Louise Spiering becomes pregnant again, she will have the child in the State of Nebraska and will desire to follow Silent Birth Methodology during the birth of the child. (Filing 27 ¶ 42.) I note that the "health concerns" to which Defendants allude do not preclude Plaintiffs from having additional children, but instead suggest that it is in the best interests of the mother and any future children for the mother have any future children in a hospital with an attending physician. (Filing 27 ¶ 56). The amendment to the complaint brings this case under the "capable of repetition yet evading review" exception to the mootness doctrine.

## Immunity: Official Capacity Claims

There is no Eleventh Amendment immunity for government officials sued in their official capacities for prospective relief. Murphy v. Arkansas, 127 F.3d 750, 754 (1997) ("State officials acting in their official capacities are § 1983 'persons'

when sued for prospective relief, and the Eleventh Amendment does not bar such relief."). The plaintiffs now seek only prospective relief.[3]

### III. Motion for Partial Summary Judgment

The defendants have moved for partial summary judgment, asserting that the defendants are protected from suit in their individual capacities by qualified immunity. I have found that the only relief sought against the defendants in their individual capacities is monetary relief, and that the plaintiffs have abandoned their claims for monetary relief. Thus I will deny the motion for partial summary judgment as mooted by plaintiff's abandonment of the only claim to which the motion related.

For the foregoing reasons,

IT IS ORDERED:

1.  The plaintiffs have abandoned their claims against the defendants in their individual capacities for money damages, although they do not waive their right to seek attorneys' fees under 42 U.S.C. § 1988 should they ultimately be prevailing parties within the meaning of that statute. The court does not now rule on whether

---

[3] The plaintiffs have not abandoned their claim for attorneys' fees under 42 U.S.C. § 1988, should they ultimately be prevailing parties. (Filing 36 at 15 n.4.) The Eleventh Amendment does not give state actors sued in their official capacities immunity from liability for all attorneys' fees under § 1988. Missouri v. Jenkins, 491 U.S. 274, 279 (1989) ("it must be accepted as settled that an award of attorney's fees ancillary to prospective relief is not subject to the strictures of the Eleventh Amendment.") (emphasis added). I do not now rule on whether all attorneys' fees that might be sought if the plaintiffs are ultimately prevailing parties are recoverable despite the strictures of the Eleventh Amendment. For purposes of the motion to dismiss, I find that the possibility that the plaintiffs will seek attorneys' fees is not a reason to grant a motion to dismiss the claims for prospective relief on Eleventh Amendment immunity grounds.

all attorneys' fees that might be sought under § 1988 if the plaintiffs are ultimately prevailing parties are recoverable despite the strictures of the Eleventh Amendment.

     2.     The Motion to Dismiss (filing 30) is denied; and

     3.     The Motion for Partial Summary Judgment (filing 33) is denied as moot in light of the abandonment of the claims against the defendants in their individual capacities.

June 28, 2005.                     BY THE COURT:

                                        *s/Richard G. Kopf*
                                        United States District Judge